**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

---------------------------------------------------------

Cindy Ginter, Annemarie Rogers, and Lisa
Kaufman on behalf of themselves and those
similarly situated,

                          Plaintiffs,                        1:12-cv-00008-M-DLM

v.

RBS Citizens, N.A., d/b/a CCO Mortgage,
Charter One, and Citizens Bank,

                          Defendant.

---------------------------------------------------------

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR CONDITIONAL CERTIFICATION

## I.     INTRODUCTION

As part of its determination of whether this matter should be conditionally certified and whether notice should be issued to the putative opt-in Plaintiffs, the Court must decide whether it is going to be the first court to adopt a "hyper-Rule 23" standard for conditional certification that turns the purpose of the FLSA and the conditional certification mechanism on its head. Plaintiffs, consistent with the vast majority of circuit courts and district courts across the country, including the district courts in the First Circuit, urge the Court to adopt and apply the first-tier fairly lenient standard, which considers the evidence put forth by Plaintiffs in the pleadings and in declarations gathered from the Plaintiffs and putative opt-in Plaintiffs.  Under that standard, the question at the conditional certification stage is whether Plaintiffs have provided sufficient evidence to show that the putative class members were together the victims of a single decision, policy, or plan that violated the law.  Defendant, on the other hand, invites the Court to adopt a standard that no court has ever adopted, one that first requires Plaintiffs to shoulder Defendant's burden of proving its own affirmative exemption defenses that Defendant does not qualify for

1

any exception to the rule that employees are entitled to overtime pay, and then requires Plaintiffs to prove that they are similarly situated to the putative opt-in Plaintiffs and "deserving" of notice.

In support of their motion, Plaintiffs provided the Court with significant evidence, including twenty (20) Plaintiff declarations which confirm that Defendant's loan officers, regardless of their location, held the same job, performed the same primary job duty of selling Defendant's loan products, regularly worked more than forty hours per week, and were consistently and uniformly denied overtime pay.  Additionally, through their Complaint and Defendant's Answer, Plaintiffs explained that although Defendant now claims that each of its loan officers are unique, it uniformly classified them as exempt until April 2012, when it uniformly reclassified them as non-exempt, overtime-eligible workers.  Taking all of that evidence into consideration and applying the well-accepted standard for conditional certification, Plaintiffs have met their burden of proving that they are similarly situated and that conditional certification and notice to the putative opt-in Plaintiffs are appropriate.

Under Defendant's proposed standard, which is even stricter than Rule 23's class certification standard, conditional certification would effectively *never* be granted absent a defendant's admission that it violated the law, or without the plaintiffs first prevailing on the merits.  Indeed, how else can a plaintiff show "that they were subject to a common *unlawful* policy"?   Adopting its proposed standard would also improperly shift the burden of proof in FLSA cases from the employer to the employee.  *Reich v. Newspapers of New England, Inc*., 44 F.3d 1060, 1070 (1st Cir. 1995) (employer, not employee, bears the burden of proving that exemptions apply).  This backwards standard would also benefit defendants and frustrate the purposes of the FLSA because parties would spend critical months, if not years, litigating the issue of whether the employer's actions violated the law while the statute of limitations continues

to run on putative opt-in plaintiffs who are not even aware of their claims.  The Court simply should not apply a standard that allows a Defendant to change its policy, and then litigate the merits of the claim for two years or more, while the statute of limitations on all potential plaintiffs runs out.  In the end, Defendant's proposed standard would fundamentally thwart Congress' stated policy of allowing collective actions as a way to "lower individual costs . . . by the pooling of resources."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Plaintiffs' proposed standard, not Defendant's, is the correct one to apply to this motion. Under that standard, Plaintiffs' declarations and evidence from the pleadings more than sufficiently shows that Plaintiffs are similarly situated at this early stage of the case.  After notice is issued and discovery is complete, Defendant may again make its arguments that Plaintiffs are purportedly not similarly situated in a second stage motion for decertification, and the Court may take that motion up using the higher standard in light of all the evidence before it that was developed through discovery.  Until then, the first-tier fairly lenient standard should apply, and Plaintiffs' motion should be granted.

## II.     ARGUMENT

### A.     The Court Should Reject Defendant's Proposed Standard

Defendant veers far off course by arguing that the Court must find that Plaintiffs were "victims of a common policy or plan that *violated the law*" in order to grant Plaintiffs' motion. (ECF No. 61 at 20.)  Adopting this standard would apparently require a group of employees to first prove that their employer violated the FLSA, and then, if successful, they would be permitted to take advantage of the benefits afforded by the collective action procedure.  From a purely economic perspective, this standard would be ideal for employers because it would allow them to engage in extensive discovery and motions on the merits, thus reducing potential

exposure to additional claims from employees who are not on notice of the lawsuit and whose claims are subject to a statute of limitations that only stops when they receive notice and then affirmatively consent to join the action by filing their written consent with the Court. *See* 29 U.S.C. §§ 216(b), 256, 257. Simply put, Defendant's proposed standard is backwards and even more stringent than the standard for Rule 23 class certification. *Nothing* in Rule 23 states that the party seeking certification must first prove liability, and courts consistently certify classes prior to making a determination on the merits.

> **B.** **Defendant's Attempt to Create Legal and Factual Differences Should Be Ignored.**

Defendant goes to great lengths to unearth alleged factual and legal differences among its loan officers. According to Defendant's argument, an employer could avoid conditional certification in a misclassification case like this one simply by asserting multiple incompatible exemption defenses, arguing that any one of the exemptions could apply, but it cannot identify which ones apply to whom. This makes no sense. As one court put it, "[h]ad Congress intended to exclude misclassification claims from collective actions, it would have done so." *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 186 (D. Conn. 2010). In light of this, courts hold that once a plaintiff has made the similarly situated showing, a defendant cannot overcome it by arguing that individual issues may dominate. *Lindberg v. UHS of Lakeside, LLC*, 761 F. Supp. 2d 752, 763 (W.D. Tenn. 2011). Instead, that issue is reserved for the decertification stage, after discovery is complete when the Court has a full record to make the determination. *Id.*

District courts commonly grant certification in cases involving FLSA exemptions, despite divergent views regarding the plaintiffs' job duties at first-stage conditional certification. *See, e.g., Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 992 (N.D. Ill. 2010); *Wlotkowski v. Mich. Bell Tel. Co.*, 267 F.R.D. 213, 218 (E.D. Mich. 2010); *Kress v.*

*PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 630 (E.D. Cal. 2009); *Luque v. AT & T Corp.*, 2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2010); *McCauley v. First Option Mortg., LLC*, 2010 WL 3522316, at *3 (E.D. Mo. Sept. 2, 2010).  In other words, "Plaintiffs can show they are similarly situated by showing that 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Seger v. BRG Realty, LLC*, 2011 WL 2020722, at *2 (S.D. Ohio May 24, 2011) (quoting *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 584 (6th Cir.2009)).  Any individual differences and their legal significance (both on the "similarly situated" question and on the merits) are properly deferred until after the completion of discovery when the second-stage analysis occurs.  *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 373 (E.D. Tenn. 2006); *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 631 (E.D. Cal. 2009); *see also Gomez v. H & R Gunlund Ranches, Inc.*, 2010 WL 5232973, at *7 (E.D. Cal. Dec. 16, 2010); *Labrie v. UPS Supply Chain Solutions, Inc.*, 2009 WL 723599, at *7 (N.D. Cal. Mar. 19, 2009); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004).  The assertion of a supposedly "fact-specific" defense does not change this.  *See Kress*, 263 F.R.D. at 630.

    1.  <u>Differences between bank loan officers and call center loan officers are irrelevant.</u>

Defendant repeatedly references the differences between its "call center" loan officers and its loan officers who are assigned to bank branches.  Yet Plaintiffs have already highlighted for the Court the distinction between these two groups ***and specifically stated in their moving papers that they do not seek to conditionally certify that small subset of loan officers.***  (*See* ECF No. 47-1 (Declaration of Paul J. Lukas), ¶ 4 ("Plaintiffs intend to either move to amend their complaint to create a sub-class, or to transfer their claims to Ohio.  Plaintiffs do not seek to conditionally certify this small group at this time.").)

2.   Because Defendant cannot legitimately claim reliance on the administrative exemption, any purported "differences" are irrelevant.

Another irrelevant difference that Defendant heavily emphasizes is the fact some of its loan officers received draws against their commissions for varying periods of time at the beginning of their employment.  As an initial matter, Defendant glosses over the fact that all of its loan officers were paid according to a single commission plan and that all loan officers were eventually transitioned to the compensation plan that did not include a draw and paid them only commissions.  In any event, Defendant uses this evidence in an attempt to convince the Court that Defendant will be able to rely on the administrative exemption in this case.

In order to claim the administrative exemption, employers must satisfy three elements, the first of which is the only element relevant to this case: an "employee employed in a bona fide administrative capacity . . . shall mean any employee [c]ompensated on a salary or fee basis at a rate of not less than $455 per week."  29 C.F.R. § 541.200(a).  Put differently, the administrative exemption does not apply to any employee who receives no salary, or a salary of less than $455 per week.  In addition, it is well settled that the administrative exemption does not cover a loan officer whose primary job duty is making sales.  *See*  29 C.F.R. § 541.203(b); DOL Op. Letter, FLSA 2006-31, n.3, 2006 WL 2792445, Sept. 8, 2006 ("FLSA 2006-31").  The outside sales exemption, on the other hand, has no salary threshold or requirement, but *does* require the employee to have a primary duty of "making sales."  29 C.F.R. § 541.500(a).

This puts Defendant in a difficult position because, in order to assert that the administrative exemption applies to its loan officers for the period of time that it paid them a draw, it must argue that their primary job duty ***was not making sales***.  But, in order to assert that the outside sales exemption applies to its loan officers for the period of time that it paid them on a commission-only basis and did not pay them a draw, it must argue that their primary job duty

6

*was making sales*.  Pointing out this logical inconsistency, one court recently held that the two exemptions "cannot be rectified" because "by their very terms, [they] are mutually exclusive—a [loan officer] cannot be simultaneously exempt under the outside sales exemption and the administrative exemption because the former requires the employee to have a primary job duty of sales, whereas that same primary job duty disqualifies an employee from coverage under the latter.  *Swigart v. Fifth Third Bank*, --- F. Supp. 2d ----, 2012 WL 1598752, at *11 (S.D. Ohio May 7, 2012) (citing 29 C.F.R. §§ 541.500, 541.203(b)) ("*Swigart II*").  In other words, Defendant's argument that this case should not be conditionally certified because a myriad of exemptions may apply to its loan officers is, quite simply, untrue.

Even if Defendant could claim the administrative exemption in this case, courts routinely grant motions for conditional certification when it legitimately disputed. *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114 (W.D. Wash. 2011) (granting conditional certification and authorizing nationwide judicial notice to mortgage underwriters despite the defendant's administrative exemption defense); *Gee v. SunTrust Mortg., Inc.*, 2011 WL 722111, at *3 (N.D. Cal. Feb. 18, 2011) (same); *Deane v. Fastenal Co.*, 2011 WL 5520972 (N.D. Cal. Nov. 14, 2011) (granting conditional certification and authorizing nationwide judicial notice despite the defendant's claim that multiple exemptions, including outside sales, executive, administrative, or the combination exemption, might apply to the putative opt-in plaintiffs.").  *Calderon v. Geico Gen. Ins. Co.*, 2011 WL 98197 (D. Md. Jan. 12, 2011) (granting conditional certification and authorizing nationwide notice to security investigators despite the defendant's administrative exemption defense); *Wlotkowski*, 267 F.R.D. 213 (granting conditional certification and authorizing nationwide notice to outside plant engineers despite the defendant's administrative exemption defense); *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746 (N.D. Ill. 2010) (same).

3. <u>Defendant's reliance on the "highly compensated" exemption defense does not bar conditional certification.</u>

Defendant makes much of the fact that some of its loan officers made more than $100,000 per year and argues that these loan officers may be subject to the highly compensated exemption defense.  The Court should ignore Defendant's arguments for three reasons.  First, conspicuously absent from Defendant's opposition is even an estimate of the number of loan officers who earned more than $100,000 on a yearly basis.  One can only assume that Defendant failed to include that figure (which should be easily derived from its payroll) because only a very small number of is loan officers earned that much, particularly in the years following the financial crisis which form the entirety of the statutory period in this case.  Second, Defendant's suggestions that FLSA overtime protections are somehow less important when the plaintiffs are highly paid cannot be squared with the FLSA's legislative history.  In fact, Congress enacted the FLSA "to spread available work among a larger number of workers and thereby reduce unemployment."  *Parker v. Nutrisystem, Inc.*, 620 F.2d 274, 279 (3d Cir. 2010).  As such, it is crucial that courts vigorously enforce the FLSA's overtime rights of well-compensated "white-collar" employees, since vigorous enforcement is likely to result in employers hiring more employees.  So long as employers are permitted to skirt the overtime laws, however, the pro-employment incentives created by the FLSA are nullified.  Finally, and most importantly, ***Defendant will be unable to claim the defense*** because, like the administrative exemption, it requires Defendant to pay its loan officers a minimum of "$455 per week on a salary or fee basis."  29 C.F.R. § 541.601(b)(1).  As explained above, Defendant paid its loan officers on a pure commission basis and as a result, the defense is unavailable.

4. Defendant's reliance on the retail sales or services exemption defense is without merit and does not bar conditional certification.

Defendant also argues that its reliance on the retail sales or services exemption defense will require an individualized analysis, and that conditional certification should be denied.  (ECF No. 61 at 8.)  But again, Defendant glosses over the most important element of the defense – that it only applies to employees "of a retail or service establishment."  29 U.S.C. § 207(i). Determination of that issue has nothing to do with the employees, and everything to do with the nature of the employer's business.  Thus, the retail sales or services defense is employer-centric, not employee-centric, and the Court's ultimate determination of whether Defendant is entitled to it will apply to all of Defendant's loan officers.[1] ***Moreover, the defense has no merit***.  Courts, including the Supreme Court, have routinely held that the banks and financial institutions are not retail, and thus cannot claim the retail sales or services exemption.  *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290 (1959); *Casas v. Conseco Fin. Corp.*, 2002 WL 507059 (D. Minn. Mar. 31, 2002) ("The holding in *Mitchell* that financial companies lack the retail concept to qualify under the exemption is clear and still good law."); *Saunders v. Ace Mortg. Funding, Inc.*, 2007 WL 1190985, at *7 (D. Minn. Apr. 16, 2007) (same); *Pontius v. Delta Fin. Corp.*, 2007 WL 1496692 (W.D. Pa. Mar. 20, 2007) *report and recommendation adopted*, 2007 WL 1412034 (W.D. Pa. May 10, 2007).

5. Defendant's reliance on the outside sales exemption does not bar conditional certification.

Defendant relies on a number of cases involving the outside sales exemption in which courts denied class or conditional certification.  These cases are distinguishable.  As an initial matter *In Re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009)

---

[1] Relatedly, Defendant's purported "good faith" defense under 29 U.S.C. § 259 (ECF No. 16 (Def.'s Answer), p. 11, ¶ 12) will fail or succeed on a class-wide basis, and has nothing to do with the individual characteristics of Plaintiffs or the putative opt-in Plaintiffs.

involved a motion for *Rule 23* class certification, not FLSA conditional certification. That case

therefore, has nothing to do with the minimal first-stage burden under the FLSA.

Unsurprisingly, district courts in the Ninth Circuit routinely reject the application of *In Re*

*Wells Fargo* to motions for FLSA conditional certification. *See, e.g.*, *Troy v. Kehe Food*

*Distribs., Inc.*, 276 F.R.D. 642 (W.D. Wash. 2011) (granting FLSA conditional certification *and*

Rule 23 class certification despite the defendant's outside sales exemption defense); *Deane*, 2011

WL 5520972 (granting conditional certification and authorizing nationwide judicial notice

despite the defendant's assertion of numerous defenses, including the outside sales exemption

defense); *Sliger v. Prospect Mortg., LLC*, 2011 WL 3747947 (E.D. Cal. Aug. 24, 2011) (granting

conditional certification and authorizing nationwide judicial notice to loan officers despite the

defendant's outside sales exemption defense). This Court should similarly reject Defendant's

argument to follow purported Ninth Circuit precedent that district courts in the Ninth Circuit

themselves do not follow in the way Defendant suggests.

Other cases cited by Defendant fare no better. In *Trinh v. JP Morgan Chase & Co.* the

only evidence produced by the plaintiffs in support of nationwide certification was the

declarations of the two named plaintiffs who worked in the same location. 2008 WL 1860161, at

*3 (S.D. Cal. Apr. 22, 2008). For that reason, the court held that the plaintiffs did not meet their

burden of showing that the defendant's loan officers from across the country were similar

situated. *Id.* at *3-5. Likewise, in *Olivo v. GMAC Mortg. Corp.*, the plaintiffs submitted no

declarations from other loan officers. 374 F. Supp. 2d 545 (E.D. Mich. 2004). This case could

not be more different. Here, Plaintiffs provided twenty declarations from other loan officers who

worked for Defendant in five different states who have or had similar job duties, were paid in the

same manner, and were all classified as exempt (and then non-exempt) as one cohesive group,

without exceptions.

      6.  <u>Competing "happy camper" testimony does not bar first-stage conditional certification.</u>

Defendant argues that conditional certification should be denied because it has obtained declarations from current employees who allege that they primarily perform exempt work and like being paid on a commission basis.  This argument fails.  Courts have repeatedly rejected employers' attempts to defeat motions for conditional certification by obtaining declaration testimony from hand-picked current employees who (not surprisingly) contradict the plaintiffs' descriptions of their job duties.  *Creely v. HCR Manorcare, Inc.*, 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011) (refusing to consider the defendant's 35 "happy camper" affidavits); *Sliger*, 2011 WL 3747947, at *3 ("declarations submitted by defendant are beside the point at this stage of the proceeding. Defendant will have an opportunity to demonstrate the merits of its affirmative defenses at the second tier stage of this proceeding."); *Luque*, 2010 WL 4807088, at *5 (quoting *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010)); *see also McCauley*, 2010 WL 3522316, at *3 ("The Court will not make any . . . findings of fact with respect to contradictory evidence presented by the parties at this initial stage.").  While the employer's evidence may later be considered when the merits are at issue, it is not a bar to conditional certification.  *Winfield v. Citibank, N.A.*, --- F. Supp. 2d ----, 2012 WL 423346, at *7 n.6 (S.D.N.Y. Feb. 9, 2012) ("the plaintiffs have not had an opportunity to depose these declarants, and courts in this Circuit regularly conclude that such declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Jewell v. Aaron's, Inc.*, 2012 WL 2477039, at *8 (N.D. Ga. June 28, 2012); *Lacy v. Reddy Elec. Co.*, 2011 WL 6149842, at *3 (S.D. Ohio Dec. 9, 2011); *Benson v. Asurion Corp.*, 2010 WL 4922704, at *5

(M.D. Tenn. Nov. 29, 2010); *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 826 (E.D. Mich. 2009).

*Creely* is particularly instructive. There, the plaintiffs supported their motion for conditional certification with three declarations from the named plaintiffs, among other evidence. 789 F. Supp. 2d at 830.  In opposition, the defendant submitted thirty-five (35) "happy camper" affidavits from current employees, all contradicting the declarations of the named plaintiffs.  *Id.* at 840.  The court squarely dismissed the relevance and weight of the defendant's affidavits at the conditional certification stage, stating:

> These affidavits are of little use at this juncture. Just as courts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs, it is no more helpful for the employer to round up a small sample of favorable statements from employees.

*Id.* (internal citation omitted).  The court went on to reject the defendant's argument that its affidavits proved evidence that an individualized inquiry was necessary, holding:

> the Court's function at this stage of conditional certification is not to perform a detailed review of individualized facts from employees hand-picked by [the defendant]. Those questions of the breadth and manageability of the class are left until the second-stage analysis following the receipt of forms from all opt-in plaintiffs.

*Id.*  This case is no different.  Plaintiffs have provided the Court with twenty declarations evidencing that Defendant's loan officers, regardless of location, all performed the same primary job duty of selling loans, were all paid on the same basis, and, until April 2012, were all classified as exempt from the protections of the FLSA.  Defendant, on the other hand, who has virtually unfettered access to every single one of its loan officers who are not currently represented by counsel, has obtained statements from eighteen hand-picked current employees.  Given these structural considerations, Defendant's evidence is underwhelming.  And more importantly, it is simply not relevant at this stage of the case.  *See Creely*, 789 F. Supp. 2d at 840.

**C.** **Defendant's Uniform Reclassification of its Loan Officers Supports Plaintiffs' Argument that they are Similarly Situated.**

Oddly, Defendant suggests that because Plaintiffs do not *solely* rely on Defendant's uniform and sweeping April 2012 reclassification of its loan officers from exempt to non-exempt the evidence is somehow unavailing.  (ECF No. 61 at 24-25.)  On the contrary, Plaintiffs argue that they are similarly situated because their job duties are similar, the way in which they were compensated is the same, *and* that they were classified and reclassified together.  Combining these facts together strengthens, not weakens, their argument that they were, together, victims of a common plan and subject to uniform payroll practices that violated the FLSA.  *Zaniewski v. PRRC Inc.*, --- F. Supp. 2d ----, 2012 WL 951936, at *16 (D. Conn. Mar. 20, 2012) ("Plaintiffs are not relying solely on PriceRite's classification of all ASMs as exempt. That is a factor courts properly consider at this preliminary stage. It supports certification when joined with other factors, which are also demonstrated by Plaintiffs' proof.")  Indeed, the Ninth Circuit in *In re Wells Fargo* stated that reclassification *was a permissible factor* in determining whether employees were similarly situated for purposes of Rule 23 class certification.  571 F.3d at 957 ("An internal policy that treats all employees alike for exemption purposes suggests that the employer believes some degree of homogeneity exists among the employees. This undercuts later arguments that the employees are too diverse for uniform treatment. Therefore, an exemption policy is a permissible factor for consideration under Rule 23(b)(3).").  Other courts agree.  *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011) ("*Swigart I*"), *Williams v. XE Servs., LLC*, 2011 WL 52353, at *4 (E.D.N.C. Jan. 4, 2011); *Wlotkowski*, 267 F.R.D. at 217-18; *Smallwood*, 710 F. Supp. 2d at 752 ("In evaluating the merits of conditional certification under Section 216(b), [the decision to reclassify all of the defendant's engineers is] far more important than any similarities or dissimilarities regarding the nuts and bolts of the

employee's day-to-day duties."); *Wittemann v. Wisc. Bell, Inc.*, 2010 WL 446033, at *1-2 (W.D. Wis. Feb. 2, 2010); *Petersen v. Marsh USA, Inc.*, 2010 WL 5423734, at *5 (N.D. Ill. Dec. 23, 2010); *Gee*, 2011 WL 722111 at *3; *Bollinger*, 761 F. Supp. 2d at 1120.

### D. Plaintiffs are Similarly Situated to the Putative Opt-In Plaintiffs

Under the proper standard, the "similarly situated" requirement is met where the plaintiffs show that they and other class members were subject to the same exempt classification, were paid in a similar manner, commonly worked more than forty hours per week without overtime compensation, and performed similar job duties. *Litz v. Saint Consulting Group, Inc.*, 2012 WL 549057, at *2 (D. Mass. Feb. 17, 2012); *Scovil v. FedEx Ground Package Sys., Inc.*, 811 F. Supp. 2d 516, 520 (D. Me. 2011) (granting conditional certification in case where the plaintiffs "had similar job duties . . . . were paid according to common policies and practices . . . . and were subject to a common [] policy, namely, alleged misclassification of employment status."); *Swigart I*, 276 F.R.D. at 213; *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 868 (S.D. Ohio 2011).  Here, Plaintiffs have offered substantial allegations that they and other loan officers are sufficiently "similarly situated" such that notice should be sent informing others of this action and giving them the opportunity to join.  Specifically, Plaintiffs have offered declarations from twenty Plaintiffs who worked for Defendant as loan officers at various times over the past three years in five different states.  They commonly allege that they: (1) performed the same job duties of selling loans, (2) were compensated on the same commission-only pay plan that did not satisfy the salary basis test, (3) were classified the same, and (4) regularly worked more than forty hours in a workweek without receiving overtime pay.  (*See* ECF Nos. 47-4 – 47-24.)

### E.      Legal Advertising is no Substitute for Judicial Notice.

Defendant nonchalantly and without any support asserts that Plaintiffs' counsel acted improperly by issuing a press release when the case was filed and providing information about the case on their firm website.  (ECF No. 61 at 33.)  Defendant does not – because it cannot – allege that the website provides false information.  Of course, truthful legal advertising has long been held to be constitutionally protected speech.  *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 472 (1988).

Defendant's accusations of improper solicitation also fail because Plaintiffs' counsel is *obligated* to inform other similarly situated employees of the case before certification.  *Stanfield v. First NLC Fin. Srvs.*, 2006 WL 6582196, at *3 (N.D. Cal. Oct. 30, 2006).  Indeed, obtaining consent forms prior to certification assists with investigating the collective claims.  *Bollinger*, 761 F. Supp. 2d at 1121-22 ("obtaining consent forms prior to certification assists plaintiffs' counsel in investigating the basis for any collective claims."); *Doyon v. Rite Aid Corp.*, 279 F.R.D. 43 (D. Me. 2011) (ordering production of names and contact information of class members *prior to certification* for discovery purposes); *Stillman v. Staples, Inc.*, 2007 WL 7261450, at *1 (D.N.J. July 30, 2007) (same).  Furthermore, pre-certification communication with putative class members is a necessary precursor to a motion for conditional certification in almost every FLSA collective action.  This is because it is the plaintiffs' burden to meet the similarly situated standard, and a lack of evidence in the form of declarations from class members is often argued by defendants (and sometimes accepted by courts) as a reason to *deny* conditional certification.[2] *See, e.g., Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007) ("a named plaintiff (or plaintiffs) must proffer some evidence that other

---

[2] Indeed, it should not be lost on the Court that Defendant submitted eighteen (18) "happy camper" declarations which it obtained by directly soliciting its current employees and by taking advantage of their employer/employee relationship.

similarly situated individuals desire to opt in to the litigation. In the absence of such evidence, there would be no basis upon which the Court could conclude that the action was an "appropriate case" for collective-action treatment."); *Burk v. Contemporary Home Servs., Inc.*, 2007 WL 2220279, at *4 (W.D. Wash. Aug. 1, 2007) (denying conditional certification because "Plaintiffs [] produced no declarations or other evidence demonstrating that any other employees seek to assert the same claims").

Defendant's final allegation is that an attorney website, about which one could only learn if one were *already* searching the internet for matters related to an FLSA case involving Defendant, is *just as good as court-ordered direct mail notice* to every putative class member. (ECF No. 61 at 33.)  That claim does not merely strain credibility; it is obviously false.  Pre-certification advertisement of a collective action is not a substitute for full and formal judicial notice.  In *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), the Supreme Court addressed the issue of judicial notice under 29 U.S.C. § 216(b).  There, before judicial notice, the plaintiffs mailed a letter to approximately 600 individuals informing them of the lawsuit and inviting them to join.  *Id.* at 168.  To ensure that all potential plaintiffs would receive notice, the plaintiffs later requested discovery of the names and addresses of all class members, and requested that the court send notice to those who had not yet filed consents.  *Id.*  To resolve the issue, the district court authorized the plaintiffs to send a notice and a consent form to all potential class members who had not yet joined, with the text and form approved by the court. *Id.* at 169.  The court attached the authorized notice to its order, and included a statement in the notice indicating that the notice had been authorized by the court, but that the court had taken no position on the merits of the plaintiffs' claims.  *Id.*

In its decision, the Supreme Court recognized that the benefits of the collective action mechanism "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170.   Accordingly, the Court held that district courts have the "authority to manage the process of joining multiple parties in a manner that is orderly [and] sensible[.]"   *Id.*   The Court concluded that "[c]ourt authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."   *Id.* at 172.   Issuance of judicial notice will ensure that *all* potential class members, not just those who have contacted Plaintiffs' counsel, receive prompt and efficient notice of this action.

**F.**      **Form Of Notice**

In a transparent attempt to further run the statute of limitations on the putative opt-in Plaintiffs, Defendant argues at the end of its brief that the Court should not approve Plaintiffs' proposed notice, and requests that the Court order the parties to meet and confer regarding its form and content.   (ECF No. 61 at 36.)   Defendant's arguments should be rejected.   Defendant's opposition brief was not subject to a specific page limit.   In fact, in addition to the thirty-nine pages it used on its opposition brief, it enjoyed the benefit of incorporating by reference thirty-three pages of briefing related to its motion to set the legal standard.   (*See* ECF Nos. 20-1, 37.) Any further arguments regarding the notice should have been made in its opposition, and Defendant should not be allowed to benefit any further from the statute of limitations running on the putative opt-in Plaintiffs' claims.

If the Court *were* to order the parties to meet and confer regarding the notice, because the statute of limitations is running on each putative opt-in Plaintiffs' claim, Plaintiffs request that the statute be tolled while the parties confer and until the Court approves a notice.   *Adams v.*

17

*Inter–Con Sec. Syst., Inc.,* 242 F.R.D. 530, 543 (N.D. Cal. 2007) (holding equitable tolling of

FLSA collective action members' statutes of limitation to be appropriate beginning one month

after plaintiffs' counsel made request for such information, where defendant had refused to

provide such information); *see also McGlone v. Contract Callers, Inc.*, 2012 WL 1174722, at *6

(S.D.N.Y. April 9, 2012).

Defendant's objection to Plaintiffs' counsel mailing the notice and proposal that the

parties hire a third party administrator should also be rejected.  Courts regularly permit Plaintiffs'

counsel to send notice without the involvement of an administrator.  *See, e.g., Jennings v. Cellco

P'ship*, 2012 WL 2568146 (D. Minn. July 2, 2012) (granting conditional certification and

authorizing Nichols Kaster to mail FLSA notice to putative opt-in plaintiffs); *Swigart I*, 276

F.R.D. 210 (same); *McCray v. Cellco P'ship*, 2011 WL 2893061 (N.D. Ga. Apr. 8, 2011)

(same); *Gee*, 2011 WL 722111 (same); *Spellman v. Am. Eagle Exp., Inc.*, 2011 WL 4102301

(E.D. Pa. May 18, 2011) *reconsideration denied*, 2011 WL 4014351 (E.D. Pa. July 21, 2011)

(granting conditional certification and authorizing The Winebrake Law Firm to mail FLSA

notice to putative opt-in plaintiffs); *Bell v. Citizen Fin. Group, Inc.*, 2010 WL 3463300 (W.D.

Pa. Sept. 2, 2010) (granting conditional certification and authorizing The Winebrake Law Firm

and Donelon, P.C. to mail FLSA notice to putative opt-in plaintiffs).

Defendant's objection to the production of its former employees' emails on privacy

grounds and concerns that the notice would be "altered and forwarded to people or otherwise be

egregiously abused" should also be rejected.  (ECF No. 61 at 37.)  Email is now a ubiquitous

form of communication, and recognizing that, courts commonly order defendants to produce

such information as part of the FLSA notice and authorize notice to be sent by email.  *See, e.g.,

Porter v. Petroleum Transp., Inc.*, 2012 WL 2557751 (S.D.W. Va. June 28, 2012); *Helton v.*

*Factor 5, Inc.*, 2012 WL 2428219 (N.D. Cal. June 26, 2012); *Harris v. Pathways Cmty.*

*Behavioral Healthcare, Inc.*, 2012 WL 1906444 (W.D. Mo. May 25, 2012); *Walker v. Honghua*

*America, LLC*, 2012 WL 1601288, at *8 (S.D. Tex. May 7, 2012); *Kelly v. Bank of Am., N.A.*,

2011 WL 7718421, at *2 (N.D. Ill. Sept. 23, 2011); *Prescott v. Prudential Ins. Co.*, 729 F. Supp.

2d 357 (D. Me. 2010).  Importantly, Defendant cites no authority to support its contention that it

should not be required to produce email addresses due to privacy concerns.  In fact, it could be

argued that receiving an email is less intrusive than receiving regular mail.  Finally, Plaintiffs

respectfully submit that the concerns voiced by the courts in *Espenscheid v. DirectSat USA, LLC*,

2010 WL 2330309 (W.D. Wis. June 27, 2010) and *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623

(D. Colo. 2002) regarding alterations to and forwarding of emailed notice are misplaced.  The

benefits of the FLSA's collective action procedure "depend on employees receiving accurate and

timely notice concerning the pendency of the filed collective action so that they can make

informed decisions about whether to participate."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S.

165, 170 (1989).  Notice by email is certainly the fastest method of delivery.  In addition, notice

by email is no more likely to be modified or further disseminated than notice by regular mail.

Importantly, Defendant cites no cases where these concerns were actually realized after notice

was sent via email.  Plaintiffs respectfully request that the Court follow the trend or more recent

FLSA conditional certification decisions and compel Defendant to produce email addresses and

authorize notice via email.

    Plaintiffs also urge the Court to reject Defendant's request for a thirty day notice period

and instead to adopt Plaintiffs' proposal for a ninety day period.  The longer notice period will

not prejudice either party or the Court given that a pretrial schedule has not been entered and the

parties have yet to engage in any discovery.  Thirty days, on the other hand, does not give the

putative opt-in Plaintiffs sufficient time to receive the notice and to weigh whether they want to participate.

The remainder of Defendant's concerns with the notice should be rejected. Plaintiffs' notice is clear and concise, states that Defendant denies the allegations, and does not suggest that the Court endorses the merits of Plaintiffs' claims or Defendant's defenses. Defendant's suggested changes are an overt attempt to convince recipients that they should not join the case. For example, Defendant's argument that the notice state that participants in this case will be required to travel to Rhode Island for depositions is an issue the parties will take up with the Court during discovery, and not relevant to the notice process. These changes should be rejected and Plaintiffs' proposed notice should be approved in full.

## III.  CONCLUSION

For all of the reasons set forth herein, Plaintiffs respectfully request that the Court grant their motion for conditional certification in full.

Respectfully submitted,

Dated: July 18, 2012      **CHARLES S. KIRWAN, ATTORNEY AT LAW**

_/s/Charles S. Kirwan_
Charles S. Kirwan
250-F Centerville Road
Warwick, RI 02886
T:  (401) 359-1166
F:  (401) 681-4324
E:  kirwanlaw@gis.net

**NICHOLS KASTER, PLLP**

_/s/Paul J. Lukas_
Paul J. Lukas, MN Bar No. 22084X*
Timothy C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402

T:  (612) 256-3200
F:  (612) 338-4878
E:  lukas@nka.com
    selander@nka.com

**WINEBRAKE & SANTILLO, LLC**
***(formerly The Winebrake Law Firm, LLC)***
Peter Winebrake, PA Bar No. 841503*
R. Andrew Santillo, PA Bar No. 93041*
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
T:  (215) 884-2491
F:  (215) 884-2492
E:  pwinebrake@winebrakelaw.com
    asantillo@winebrakelaw.com

**DONELON, P.C.**
Brendan J. Donelon, MO Bar No. 43901*
802 Broadway, 7th Floor
Kansas City, Missouri 64105
T:  (816) 221-7100
F:  (816) 472-6805
E:  brendan@donelonpc.com

*admitted pro hac vice*

**Counsel for Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2012, the foregoing **Plaintiffs' Reply Brief in Support of their Motion for Conditional Certification,** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Brendan J. Donelon, Brendan@donelonpc.com;
> Charles S. Kirwan, kirwanlaw@gis.net;
> Lauren Marzullo, lmarzullo@morganlewis.com;
> Paul J. Lukas, lukas@nka.com;
> Samuel S. Shaulson, sshaulson@morganlewis.com;
> Sarah E. Bouchard, sbouchard@morganlewis.com;
> Timothy C. Selander, selander@nka.com; and
> Todd S. Holbrook, tholbrook@morganlewis.com.

Parties may access this filing through the Court's CM/ECF System.

                    */s/Paul J. Lukas*
                    Paul J. Lukas