UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

-------------------------------------------------------------

| | |
|---|---|
| Cindy Ginter, Annemarie Rogers, Lisa Kaufman, Arthur Maxon, Erdine Skelton, Dennis Hurley, Paul Gay, Lynne Duban, Jonathan D. Saxon, and Patricia Haubrich on behalf of themselves and those similarly situated, | NO.  1:12-cv-00008-M-PAS |
| Plaintiffs, | |
| v. | |
| RBS Citizens, N.A., d/b/a CCO Mortgage, Charter One, and Citizens Bank, | |
| Defendant. | |

-------------------------------------------------------------

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

Plaintiffs Cindy Ginter, Annemarie Rogers, Lisa Kaufman, Arthur Maxon, Erdine

Skelton, Dennis Hurley, Paul Gay, Lynne Duban, Jonathan D. Saxon, and Patricia Haubrich

(collectively, "Plaintiffs") on behalf of themselves and all other opt-in Plaintiffs and the putative

Rule 23 classes, respectfully move this Court for an Order granting Plaintiffs' Unopposed

Motion for Preliminary Approval of the Class Action Settlement.  With this unopposed motion,

Plaintiffs ask the Court to (1) preliminarily approve the parties' settlement as fair, reasonable,

and adequate; (2) certify the proposed settlement classes pursuant to Rule 23(e) of the Federal

Rules of Civil Procedure in connection with the settlement process; (3) for settlement purposes,

appoint Nichols Kaster, PLLP, Winebrake & Santillo, LLC, and Donelon, P.C. as Class Counsel

and the Named Plaintiffs as Class Representatives; (4) approve the parties' proposed notice of

settlement (attached to Exhibit A as Exhibit 1) and proposed notice procedure; (5) set a date for

Plaintiffs to file a motion for final settlement approval and petition for an award of attorneys'

fees and costs; and (6) schedule the Fairness Hearing.

      **WHEREFORE**, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed

Motion for Preliminary Approval of the Class Action Settlement.


                           Respectfully submitted,

Dated: September 20, 2013         **CHARLES S. KIRWAN, ATTORNEY AT LAW**

                         */s/Charles S. Kirwan*
                         Charles S. Kirwan
                         250-F Centerville Road
                         Warwick, RI 02886
                         T:  (401) 359-1166
                         F:  (401) 336-2448
                         E:  csk@kirwanlaw.net

                         **NICHOLS KASTER, PLLP**

                         */s/Paul J. Lukas*
                         Paul J. Lukas, MN Bar No. 22084X*
                         Timothy C. Selander, MN Bar No. 0387016*
                         4600 IDS Center, 80 South 8th Street
                         Minneapolis, MN 55402
                         T:  (612) 256-3200
                         F:  (612) 338-4878
                         E:  lukas@nka.com
                            selander@nka.com

                         **WINEBRAKE & SANTILLO, LLC**
                         Peter Winebrake, PA Bar No. 841503*
                         R. Andrew Santillo, PA Bar No. 93041*
                         Twining Office Center, Suite 211
                         715 Twining Road
                         Dresher, PA 19025
                         T:  (215) 884-2491
                         F:  (215) 884-2492
                         E:  pwinebrake@winebrakelaw.com
                            asantillo@winebrakelaw.com

**DONELON, P.C.**
Brendan J. Donelon, MO Bar No. 43901*
802 Broadway, 7th Floor
Kansas City, Missouri 64105
T:  (816) 221-7100
F:  (816) 472-6805
E:  brendan@donelonpc.com

*admitted pro hac vice*

**Counsel for Plaintiffs**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 20, 2013, the foregoing **Unopposed Motion for Preliminary Approval of the Class Action Settlement** and attached **Brief in Support**, were filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

      Brendan J. Donelon, Brendan@donelonpc.com;
      Charles S. Kirwan, kirwanlaw@gis.net;
      Lauren Marzullo, lmarzullo@morganlewis.com;
      Paul J. Lukas, lukas@nka.com;
      Peter Winebrake, pwinebrake@winebrakelaw.com;
      R. Andrew Santillo, asantillo@winebrakelaw.com;
      Samuel S. Shaulson, sshaulson@morganlewis.com;
      Sarah E. Bouchard, sbouchard@morganlewis.com;
      Timothy C. Selander, selander@nka.com; and
      Todd S. Holbrook, tholbrook@morganlewis.com.

Parties may access this filing through the Court's CM/ECF System.

                              */s/Paul J. Lukas*
                              Paul J. Lukas

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF RHODE ISLAND

---

| | |
|---|---|
| Cindy Ginter, Annemarie Rogers, Lisa Kaufman, Arthur Maxon, Erdine Skelton, Dennis Hurley, Paul Gay, Lynne Duban, Jonathan D. Saxon, and Patricia Haubrich on behalf of themselves and those similarly situated, | NO.  1:12-cv-00008-M-PAS |

Plaintiffs,

v.

RBS Citizens, N.A., d/b/a CCO Mortgage, Charter One, and Citizens Bank,

Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF THE CLASS ACTION SETTLEMENT

Plaintiffs Cindy Ginter, Annemarie Rogers, Lisa Kaufman, Arthur Maxon, Erdine Skelton, Dennis Hurley, Paul Gay, Lynne Duban, Jonathan D. Saxon, and Patricia Haubrich (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for preliminary approval of the proposed settlement with Defendant RBS Citizens, N.A. ("RBS"). The "Stipulation and Settlement Agreement" ("Agreement") accompanies the motion. *See* Ex. A.  For the reasons discussed herein, the Court should preliminarily approve the Agreement and the notice protocols described therein, appoint the law firms of Nichols Kaster, PLLP, Winebrake & Santillo, LLC, and Donelon, P.C. to serve as class counsel, and certify the proposed settlement classes.

I.      **BACKGROUND**

A.      **Plaintiffs' Legal Claims and Relevant Procedural History**

Originating Plaintiffs Cindy Ginter, Lisa Kaufman, and Annemarie Rogers ("Originating Plaintiffs") filed this case against their former employer, RBS, in the U.S. District Court for the District of Rhode Island on January 9, 2012. *See* Doc. 1.  Originating Plaintiffs worked as mortgage loan officers ("MLOs") for RBS for varying periods of time[1] and brought the suit on behalf of themselves and other similarly situated MLOs seeking overtime pay under the Fair Labor Standards Act ("FLSA") and the Pennsylvania Minimum Wage Act ("PMWA").  In their Complaint, Originating Plaintiffs allege that RBS misclassified them and all other MLOs as exempt and that, as a result, they and all other MLOs are entitled to overtime pay for weeks in which they worked more than forty hours in a workweek.

RBS filed its Answer on March 12, 2012 denying the allegations in the Complaint. *See* Doc. 16.  In its Answer, RBS averred that it properly classified Originating Plaintiffs and all MLOs as exempt employees under a number of different exemptions to the overtime pay requirements, including the administrative, outside sales, retail sales, executive, professional, highly compensated, and combination exemptions.  Pursuant to 29 U.S.C. § 259, RBS also plead an affirmative defense seeking blanket immunity from liability on the grounds that its "alleged failure to pay [Originating] Plaintiffs or any putative class or collective action member overtime wages . . . was in good faith conformity with and in reliance on an administrative regulation,

---

[1] Plaintiff Ginter worked in the Altoona, Pennsylvania area from approximately April 2008 until September 2011.  Plaintiff Kaufman worked in the Detroit, Michigan area from December 2009 until September 2011.  Plaintiff Rogers worked in the Detroit, Michigan area from approximately March 2010 until April 2011.

order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the Wage and Hour Division of the United States Department of Labor and/or the Pennsylvania Department of Labor and Industry."  Doc. 16 at 11.

Shortly after filing its Answer, RBS moved to "set the standard" for FLSA conditional certification, *see* Doc. 20, which lead to several months of briefing, *see* Docs. 35, 37, 39.  On May 21, 2012, Plaintiffs filed their motion to conditionally certify this case as a collective action pursuant to 29 U.S.C. § 216(b).  *See* Doc. 47.   Plaintiffs' conditional certification motion was supported by 20 declarations from party-plaintiffs who worked as MLOs for RBS.  *Id.*  The parties then proceeded to spend nearly four months briefing conditional certification and judicial notice.  *See* Doc. 61.  The Court held oral argument on September 10, 2012, and granted Plaintiffs' motion from the bench.  *See* Doc. 67.

On September 21, 2012, Plaintiffs' Counsel mailed and emailed the Court-approved FLSA notice to 507 individuals who had worked for RBS as MLOs within the prior three years. Lukas Decl. ¶ 3.  The notice period closed on December 20, 2012 with approximately 220 eligible MLOs having joined or "opted-in" to the case.  *See* Docs. 2, 5, 7, 9-10, 12-15, 30, 32-34, 38, 41-43, 55-56, 59-60, 62-64, 66, 70, 71-82, 84-121.[2]

Shortly after mailing the notice, the parties agreed to stay the case deadlines and to mediate following the close of the opt-in period.  *See* Docs. 68-69.

### B.       RBS's Mortgage Business and its MLOs

RBS does business in the United States under the "Citizens Bank" and "Charter One" brand names.  It is a subsidiary of Citizens Financial Group, Inc., a financial holding company

---

[2] Plaintiffs' Counsel has continued to file consent forms received from additional MLOs after the December 20th deadline to toll the running of their statute of limitations period.  *See* Docs. 121-26.

and Delaware corporation with its principal place of business located in Providence, Rhode Island.  In total, RBS operates more than 1,500 bank branches in twelve states.  RBS provides financial services to consumers, including but not limited to home purchase financing, refinancing, personal banking, and loan and mortgage processing.

RBS employs MLOs to assist consumers with its mortgage loan products.  MLOs perform this duty in person at RBS mortgage offices and bank branches, over the telephone, over the internet through email communications, and at various other locations.  Until April 2012, RBS classified its MLOs as exempt and paid them on a draw plus commissions basis.[3]  RBS did not track MLOs' hours worked and did not pay them overtime when they worked more than 40 hours in a workweek.

As part of their duty of assisting customers with RBS mortgage loan products, MLOs collected and analyzed information and documents from customers to complete the loan package.  Once complete, they submitted it to RBS's mortgage underwriters for approval. MLOs had no underwriting authority, and as a result, RBS required all loans to be reviewed and approved by the underwriting department.  If a loan was approved, MLOs worked with the customer to prepare for the closing.  If a loan was not approved, MLOs worked with the customer to cure any deficiencies in the loan package or attempted to offer the customer a different loan.

In April 2012, RBS MLOs became eligible for overtime compensation.

**C.    Mediation**

In an effort to facilitate settlement of this matter, the parties retained Michael E.

---

[3] The amount of commissions MLOs earned depended on the total dollar value and/or quantity of loans they originated during each pay period.  RBS calculated and paid commissions to MLOs according to commission pay plans which applied to all MLOs.

Dickstein, Esq. of Dickstein Dispute Resolution/MEDiate in San Francisco to serve as a neutral mediator in this matter.  Mr. Dickstein has significant experience mediating similar class and collective actions and has published several articles concerning alternative dispute resolution.

In anticipation of the mediation, RBS produced certain payroll data to Plaintiffs' Counsel including:  (i) the weeks worked and annual compensation amounts for the relevant statutory period for each opt-in plaintiff; and (ii) the weeks worked and number of potential Rule 23 class members for the states of Pennsylvania, New York, New Jersey, Massachusetts, Rhode Island, Ohio, Illinois and New Hampshire for the prior three years.  Lukas Decl. ¶ 5.  This data, combined with estimates of hours worked by the MLOs who had joined this litigation, allowed Plaintiffs' Counsel to create a damages model detailing RBS's potential exposure if the mediation was unsuccessful and Plaintiffs prevailed on the merits.  *Id.*

On February 12, 2013, the parties participated in an all-day mediation session with Mr. Dickstein in New York City, New York.  *Id.* ¶ 4.  Prior to the mediation, the parties provided Mr. Dickstein with detailed mediation briefs outlining their respective positions in this litigation so that he would be fully informed as to the issues that were present.  *Id.* ¶ 5.  Late in the evening on February 12th, the parties executed a five-page memorandum of understanding resolving MLO's claims under the FLSA and the respective overtime laws for the states of Pennsylvania, New York, New Jersey, Massachusetts, Rhode Island, Ohio, Illinois and New Hampshire for a total of $3,000,000.00.[4]

---

[4] Plaintiffs subsequently filed an Amended Complaint which asserted the original FLSA and PMWA claims, but also asserted Rule 23 claims under the New York Labor Law ("NYLL"), the New Jersey Wage and Hour Law ("NJWHL"), the Massachusetts Wage Act ("MWA"), the Rhode Island Minimum Wage Act ("RIMWA"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), the  Illinois Minimum Wage Law ("IMWL"), and the New Hampshire Protective Legislation Law ("NHPLL").  *See* Doc. 127.

D.      **The Agreement**

The Settlement Agreement's material terms are summarized below:

   *1.      The Settlement Classes*

For purposes of settlement only, the parties have agreed to certification of the following eight State Law Classes pursuant to Federal Rule of Civil Procedure 23(b)(3) under the laws of Pennsylvania, New York, New Jersey, Massachusetts, Rhode Island, Ohio, Illinois, and New Hampshire:

> All persons who worked as a Mortgage Loan Officer for Defendant in the Commonwealth of Pennsylvania at any time between September 10, 2009 and April 15, 2012 (the "PMWA Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of New York at any time between February 12, 2007 and April 15, 2012 (the "NYLL Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of New Jersey at any time between September 10, 2009 and April 15, 2012 (the "NJWHL Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the Commonwealth of Massachusetts at any time between September 10, 2009 and April 15, 2012 (the "MWA Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of Rhode Island at any time between September 10, 2009 and April 15, 2012 (the "RIMWA Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of Ohio at any time between September 10, 2009 and April 15, 2012 (the "OMFWSA Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of Illinois at any time between September 10, 2009 and April 15, 2012 (the "IMWL Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of New Hampshire at any time between September 10, 2009 and April 15, 2012 (the "NHPLL Rule 23 Class").

Agreement at ¶¶ 1.37, 2.1.1.  The above Classes consist of 486 individuals (or "Class

Members").  In addition, those Class Members who have filed a consent with the Court to join

this litigation pursuant to 29 U.S.C. §216(b) or who complete a Consent to Join the Settlement

Form will also release their claims under the Federal Fair Labor Standards Act.  *Id.* at ¶¶ 1.34;

2.6.3; *see also* Form 1-A.  In total, the parties' Settlement Agreement involves up to 569 current

and former MLOs.

###    2.    *The Payments*

Under the settlement, RBS will contribute a total of **$3,000,000.00** to settle this action on

a class-wide basis.  *See* Agreement at ¶ 1.38.  The Agreement, if approved, will divide the

**$3,000,000.00** as follows:  (i) $2,188,000 will be paid to Class Members representing claimed

unpaid compensation;  (ii) subject to Court approval, $22,000 in enhancement awards will be

distributed amongst Originating Plaintiffs Cindy Ginter, Annemarie Rogers, and Lisa Kaufman

(who will receive $5,000 each) as well as  Arthur Maxon, Erdine Skelton, Dennis Hurley, Paul

Gay, Lynne Duban, Jonathan D. Saxon, and Patricia Haubrich (who will receive $1,000 each) in

recognition of their efforts on behalf of the class and their enhanced litigation positions;  (iii)

subject to Court approval, $750,000 will be paid to Plaintiffs' Counsel for accumulated

attorney's fees; (iv) approximately $30,000 shall be paid to Plaintiffs' Counsel for accumulated

litigation costs and expenses; and (v) $10,000 shall be paid for the retention of a third-party

claims administrator.[5]

###    3.    *The Release*

---

[5]   As part of the final approval motion, Plaintiffs' Counsel will provide the Court with case law
supporting the payment of the enhancement awards and contemporaneous time and expense
records establishing the reasonableness of the proposed fee and expense recovery.  Because the
settlement is not contingent on the Court's approval of the enhancement award or the requested
fees/expenses, it is not necessary to address these matters at the preliminary approval stage.

In exchange for the above consideration, Class Members who do not exclude themselves from the settlement will release RBS from all wage and hour claims including:  (a) all state law claims pled in the Complaint; (b) any and all claims related to overtime or overtime pay, whether known or unknown, under applicable state laws arising from employment as an MLO; (c) any and all claims whether known or unknown and no matter how denominated, under applicable state laws for minimum wage, deductions from pay, meal and rest breaks; and retaliation; (d) all claims for penalties (including late payment penalties); and (e) liquidated damages, interest, attorneys; fees, or litigation expenses under applicable state laws.  *See* Agreement at ¶¶ 1.34-1.35, 2.8.1, 2.8.2.  Importantly, Class Members do ***not*** release other types of legal claims, and only Class Members who opt-in to the settlement waive any claims under the FLSA.  *See id.*[6]

## II.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

### A.      Standard for Granting Preliminary Approval

Federal courts must approve class action settlements and ensure that settlement class members receive sufficient notice of the settlement and that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The approval of a class action settlement entails a two-step process.  Initially, the court makes a preliminary determination of the settlement's fairness.  If the court preliminarily determines that the settlement is fair, settlement class members are notified of the settlement and a final fairness hearing is scheduled.  Later, at the final fairness hearing, the court undertakes a more thorough evaluation of the settlement's fairness, reasonableness, and adequacy.  *See generally Baptista v. Mutual of Omaha Ins. Co.*, 859 F. Supp. 2d 236, 240 (D.R.I. 2012); *Trombley v. Bank of America Corp.*, 2011 WL 3740488 (D.R.I. Aug. 24, 2011) ("*Trombley II*"), *Trombley v. Bank of America Corp.*, 2011 WL 3273930 (D.R.I.

---

[6] All named Plaintiffs, however, have agreed to provide RBS with a general release.  *See* Agreement at ¶ 2.9.4.

July 29, 2011) ("*Trombley I*").

The *Manual for Complex Litigation* (Fourth) (2006) provides a framework for the court's preliminary evaluation of a proposed class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). The judge must make a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.* § 21.632; *see also In re: Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002); *Newberg on Class Actions* § 11:25, at 38-39 (4th ed. 2000).

At the preliminary approval stage, a "court can only determine whether the proposed settlement appears to fall within the range of possible final approval." *Trombley II*, 2011 WL 3740488 at *4; *see also In re: Lupron(R) Mktg. and Sales Practices Litig.*, 345 F. Supp. 2d 135, 138 (D. Mass. 2004) (preliminarily approving class settlement and holding that "the proposed settlement amount is sufficiently within the range of reasonableness"). The Court does not, however, determine whether a proposed settlement will ultimately receive final approval as fair and reasonable as part of the preliminary approval stage. *See Trombley II*, 2011 WL 3740488, at *4 (stating that "the parties' request for a ruling that the claims administration and distribution plan in the Settlement Agreement are fair and adequate is premature" at the preliminary approval stage). As this Court has previously observed:

A proposed settlement of a class action may be given preliminary

> approval where it is the result of serious, informed, and non-
> collusive negotiations, where there are no grounds to doubt its
> fairness and no other obvious deficiencies (such as unduly
> preferential treatment of class representatives or of segments of the
> class, or excessive compensation for attorneys), and where the
> settlement appears to fall within the range of possible approval.

*Trombley I*, 2011 WL 3273930, at *5 (internal quotations omitted).

Instead, a court will later determine whether a proposed settlement is "fair, adequate, and reasonable" after notice has been provided to all potential class members during a fairness hearing. *See Durrett v. Housing Auth. of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *see also Trombley II*, 2011 WL 3740488, at *4 ("All findings and rulings for purposes of preliminary approval are contingent on the parties achieving successful final approval of the Settlement Agreement."); *In re: Traffic Executive Assoc.*, 627 F.2d 631, 634 (2d Cir. 1980) (at preliminary approval stage court determines "what might be termed probable cause' to submit the proposal to Settlement Class members and hold a full-scale hearing as to its fairness"); *In re: Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (purpose of preliminary approval is "to ascertain whether there is any reason to notify the Settlement Class Members of the proposed settlement and to proceed with a fairness hearing"); *In re: Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (court does not conduct "definitive proceeding on the fairness of the proposed settlement" and "must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable and adequate").

When reviewing class action settlements, courts are mindful of the "clear policy in favor of ***encouraging settlements***." *Durrett*, 896 F.2d at 604 (emphasis supplied); *see also In re: Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

Moreover, the First Circuit has stated that "there is a presumption in favor of settlement" when the record demonstrates that "sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also In re: Auto. Refinishing Paint Antitrust Litig.*, 2003 U.S. Dist LEXIS 4641, *2-3 (E.D. Pa. Mar. 17, 2003) (the court should "give deference to the recommendations of experienced attorneys who have engaged in arms-length settlement negotiations."); *In re: Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of correctness is said to attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery").

### B.   The Proposed Settlement Warrants Preliminary Approval

The Court should preliminarily approve the proposed settlement because it represents an excellent result in light of the facts and circumstances of this litigation.

First, the settlement enables Plaintiffs and the Class Members to avoid significant litigation risks regarding at least three important issues:  (1) whether the subject MLOs are overtime-exempt; (2) the extent to which these MLOs actually worked overtime hours; and (3) the chance that the Court would later rule that the MLOs are unable to proceed on a class/collective basis.   At this early state of the litigation, the ultimate determination of these issues remains uncertain.

Second, while every case is different, the average gross payout of approximately $3,800 per class member compares favorably to other recent settlements in which employees allege that they were misclassified as overtime-exempt.  *See*, *e.g.*, *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *10 (M.D. Pa. Jan. 7, 2013) (granting final approval to settlement in which allegedly misclassified Assistant Store Managers received average payouts of $1,845).

Plaintiffs' Counsel, who have resolved many overtime rights cases on both a class-wide

and individual basis, are convinced that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements.   The settlement negotiations were conducted fairly and at arm's-length with the assistance of an experienced mediator and after the exchange and rigorous analysis of ample data.  Moreover, the timing of the settlement promotes judicial economy and enables settlement Class Members to recover money without undue delay.

In sum, the settlement easily clears the requirements for preliminary approval.

## III.  THE COURT SHOULD APPROVE THE NOTICE PLAN

When a class action lawsuit is settled, "[t]he court must direct to class members notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Moreover:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; and (vi) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, the Agreement requires that, within fifteen (15) business days after the Preliminary Approval Order, the Notice Form will be mailed to each Class Member's last known address. *See* Agreement at ¶¶ 1.22, 1.25.  Prior to this mailing, the third-party administrator will perform an address check to ensure accuracy of the addresses that are utilized.  *Id.* at ¶ 2.5.4.  Returned forms will go through a thorough re-mailing process.  *Id.* at ¶ 2.5.8.

In addition the Notice Form, which is attached to the Agreement as Exhibit 1, clearly provides Class Members with the following:  (a) a description of the Class; (b) a description of

the litigation; (c) a description of the proposed settlement and of the scope of the release; (d) the

identification of Class Counsel; (e) disclosure of Class Counsel's anticipated request for an

award of attorneys' fees, costs, and expenses; (f) an explanation of Class Members' right to be

excluded from the settlement and the consequences of exclusion; (g) an explanation of the

procedure and deadline for filing exclusion requests; (h) an explanation of the right to object to

the settlement; (i) an explanation of the procedure and deadline for filing objections to the

settlement; and (j) an announcement of the time and location of the final approval hearing.

The above-described Notice Form and notice process easily fulfills Rule 23's notice

requirements.  In fact, such individualized mailing has been recognized as the best notice that

can practicably be given to absent class members.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S.

156, 175 (1974); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir.

1975).

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

In connection with preliminary approval, Plaintiffs request that the Court certify for

settlement purposes the following Settlement Classes, as defined in the Agreement under the

laws of Pennsylvania, New York, New Jersey, Massachusetts, Rhode Island, Ohio, Illinois and

New Hampshire:

> All persons who worked as a Mortgage Loan Officer for Defendant in the Commonwealth of Pennsylvania at any time between September 10, 2009 and April 15, 2012 (the "PMWA Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of New York at any time between February 12, 2007 and April 15, 2012 (the "NYLL Rule 23 Class").

> All persons who worked as a Mortgage Loan Officer for Defendant in the State of New Jersey at any time between September 10, 2009 and April 15, 2012 (the "NJWHL Rule 23 Class").

All persons who worked as a Mortgage Loan Officer for Defendant in the Commonwealth of Massachusetts at any time between September 10, 2009 and April 15, 2012 (the "MWA Rule 23 Class").

All persons who worked as a Mortgage Loan Officer for Defendant in the State of Rhode Island at any time between September 10, 2009 and April 15, 2012 (the "RIMWA Rule 23 Class").

All persons who worked as a Mortgage Loan Officer for Defendant in the State of Ohio at any time between September 10, 2009 and April 15, 2012 (the "OMFWSA Rule 23 Class").

All persons who worked as a Mortgage Loan Officer for Defendant in the State of Illinois at any time between September 10, 2009 and April 15, 2012 (the "IMWL Rule 23 Class").

All persons who worked as a Mortgage Loan Officer for Defendant in the State of New Hampshire at any time between September 10, 2009 and April 15, 2012 (the "NHPLL Rule 23 Class").

As already explained, in total these classes include 486 individuals.

As discussed below, the proposed class should be certified for purposes of settlement:

## A.   <u>Class Certification Under Rule 23</u>

Class certification "enables courts to treat common claims together, obviating the need for repeated adjudications of the same issues" and serves various "important objectives," such as "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." *In re: GMC Pick-Up Truck Fuel Tank Prod. Liab. Litig*, 55 F.3d 768, 783-84 (3d Cir. 1995) (internal quotations omitted). "'Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device.'" *Id.* at 784 (quoting *Deposit Guarantee Nat'l Bank v Roper*, 455 U.S. 326, 339 (1980)).

As the First Circuit Court of Appeals has observed:

> The class certification prerequisites should be construed in light of the underlying objective of class actions. Rule 23(b)(3) is intended to be a less stringent requirement than Rule 23(b)(1) or (b)(2). The core purpose of Rule 23(b)(3) is to **vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation**.

*Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 41 (1st Cir. 2003) (emphasis supplied and internal citations omitted). Moreover, "the certification of a settlement class can provide significant benefits to class members while enabling defendants to achieve an expedited and final resolution of multiple suits." *In re: Lupon(R) Marketing and Sales Practices Litigation*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004).

Before granting preliminary approval to a class action settlement agreement, a court must ensure that the elements or Rule 23(a) and (b) are met in order to protect absent class members. *See Tardiff v. Knox County*, 365 F.3d 1, 4 (1st Cir. 2004); *Trombley I*, 2011 WL 3273930, at *2. Here, Plaintiffs seek class certification under Rule 23(b)(3), which provides:

> A class action may be maintained if . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23.

### *1.     Rule 23(a)(1)'s Numerosity Requirement is Satisfied.*

Rule 23(a)(1)'s numerosity requirement is met "if the class is so large that joinder of all the class members would be impracticable." *Trombley I*, 2011 U. WL 3273930, at *2. Notably, "[i]mpracticability does not mean impossibility, but only the difficulty or inconvenience of joining all members of the class." *Adver. Specialty Nat'l Assoc. v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956) (internal quotations omitted). District courts frequently observe that the numerosity

requirement "is not a difficult burden to satisfy," *In re: Carbon Black Antitrust Litig.*, 2005 WL

102966, at *9 (D. Mass. Jan. 18, 2005).

Here, numerosity is satisfied because the Classes in total include approximately 486

individuals and with the exception of New Jersey, each of the proposed state specific classes has

at least 20 members.[7]

### 2.      Rule 23(a)(2)'s Commonality Requirement is Satisfied

Commonality is met where "the claims of the class '[] depend upon a common contention

. . . [which] must be of such a nature that it is capable of classwide resolution—which means that

determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke.'"  *Trombley I*, 2011 WL 3273930, at *3 (*quoting Wal-Mart Stores,

Inc. v. Dukes*, 131 S. Ct. 2541 (2011)).   District Courts within the First Circuit have described

the Rule 23(a)'s commonality requirement as "a low bar" that is "generally given [] a permissive

application."  *In re: New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 19 (1st

Cir. 2008).

Here, Plaintiffs contend that the commonality requirement is satisfied because, *inter alia*,

Class Members were subjected to the same overtime-exempt classification and, during the

relevant time period, generally performed their job duties pursuant to similar policies and

procedures.  As such, the success or failure of each Class Member's claim generally turns on the

---

[7] The New Jersey settlement class consists of 12 MLOs and is the smallest of all of the state law settlement classes.  Other courts have certified classes of approximately the same size.  See, e.g., Philadelphia Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (holding that 25 putative class members satisfied the numerosity requirement); Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n, 375 F.2d 648 (4th Cir. 1967) (class of 18 individuals found sufficiently numerous); Grant v. Sullivan, 131 F.R.D. 436, 446 (M.D. Pa. 1990) (certification of class may be proper even with class as small as 14 members); Meyer v. Stevenson, Bishop, McCredie, Inc., 1976 WL 788 (S.D.N.Y. 1976) (certifying class of thirty individuals).  In this case, Defendant does not contest certification and certification is appropriate for settlement purposes.

common question of whether the overtime-exempt classification violates the FLSA and the analogous state overtime laws.  Several federal courts have held that Rule 23's commonality requirement is fulfilled in cases where MLOs and other employees in the banking industry have asserted similar state law overtime misclassification claims.  *See Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184  (S.D. Ohio 2012) ("Courts routinely certify misclassification cases with similar common questions because the central question of whether the employees were wrongfully classified as exempt from overtime pay requirements is common to the class."); *Lyons v. Citizens Fin. Group, Inc.*, 2012 WL 5499878  (D. Mass. Nov. 9, 2012).

### 3.    *Rule 23(a)(3)'s Typicality Requirement is Satisfied*

In determining whether typicality is met, Courts must find that "the representatives' injuries arise from the same events or course of conduct as do the injuries of the class and the representatives' claims and those of the class are based on the same legal theory." *Trombley I*, 2011 WL 3273930, at *3 (internal quotations and brackets omitted).  "'[P]laintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent class members.'" *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004) (*quoting Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988)).

Here, Plaintiffs contend that typicality exists because Plaintiffs and every Class Member share the same interest of recovering unpaid overtime wages based on the same legal theory: that RBS's alleged misclassification of MLOs violated the FLSA and the various state overtime laws.

### 4.    *Rule 23(a)(4)'s Adequacy Requirement is Satisfied*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In determining adequacy, courts must determine that the "representative parties will not conflict with the interests of any of the class members, and that

counsel chosen by the representative parties is qualified, experienced, and able to vigorously

conduct the proposed litigation." *Trombley I*, 2011 WL 3273930, at *3 (internal quotations and

brackets omitted); *see also Gordon v. Corporate Receivables, Inc.*, 2010 WL 376386, at *2

(D.R.I. Jan. 27, 2010) (the adequacy analysis consists of determining whether "(a) the

representative plaintiff's interests are not antagonistic to the class she seeks to represent, and (b)

that the class will be represented by qualified counsel.").

Here, Plaintiffs contend that Rule 23(a)(4)'s adequacy requirement is satisfied.  As

discussed in the attached Declarations of Plaintiffs' Counsel Paul J. Lukas, R. Andrew Santillo,

and Brendan Donelon, Plaintiffs' Counsel is qualified, experienced, and generally able to

conduct this litigation on behalf of the proposed classes.

Moreover, Plaintiffs do not have interests that are antagonistic to other Class Members.

Rather, Plaintiffs and each Class Member share a common interest in recovering unpaid overtime

wages.

### 5. *Rule 23(b)(3) is Satisfied*

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for the fairly and efficiently adjudicating the controversy."

Here, Plaintiffs contend that the claims satisfy the requirements of Rule 23(b)(3).

### a. Common Questions Predominate

When "common questions predominate regarding liability, then courts generally find the

predominance requirement to be satisfied even if individual damages issues remain." *In re: New

Motor Vehicles*, 522 F.3d at 23; *see also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288,

296 (1st Cir. 2000) (predominance requires finding that "a sufficient constellation of common

issues binds class members together."); *Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely

that common issues predominate, not that all issues be common to the class."). "[T]he existence

of a common disputed issue weighs in favor of class certification, not against it." *In re: New*

*Motor Vehicles*, 522 F.3d at 23.

Here, Plaintiffs contend that the Rule 23(b)(3)'s predominance requirement is satisfied

because all Class Members share a common set of core, predominant facts, including, *inter alia*:

- All Class Members were uniformly classified as overtime-exempt during the relevant time period;

- All Class Members were required to follow standardized training materials and uniform operational protocols; and

- Class Members were subjected to standardized payroll and timekeeping practices.

Other federal courts have found the predominance factor to be readily fulfilled in similar

misclassification class actions on behalf of MLOs and other financial sector employees. *See*,

*e.g.*, *Swigart*, 288 F.R.D. 177; *Lyons*, 2012 WL 5499878.

              b.      <u>A Class Action is Superior to Other Methods</u>

In addition to the predominance requirement, Rule 23(b)(3) requires that the court find

that a class action is superior to other available methods for the fair and efficient adjudication of

the dispute. "[A] class action [ . . . ] is superior to other methods [where there is] the clear

commonality of claims and cost-sharing efficiencies of aggregating individual claims which each

have a relatively limited potential recovery into a collective action." *Gordon*, 2010 WL 376386,

at *3. There are four factors that courts utilize in determining whether superiority is met. *See*

Rule 23(b)(3). Applying these factors, Plaintiffs contend that it becomes clear that Rule

23(b)(3)'s superiority requirement is satisfied here.

First, Rule 23(b)(3)(A) counsels against class certification where individual class

members have a strong interest in "individually controlling the prosecution" of separate actions.

This generally arises in lawsuits involving "a high degree of emotional involvement, extremely large [individual] damages claims, and a desire to tailor trial tactics to individual needs." NEWBERG at §4:29.  This action bears none of these hallmarks.  On the contrary, because damages are relatively small for individual settlement class members compared to litigation costs, there is a strong interest in collective litigation.

Second, Rule 23(b)(3)(B) requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members.  This factor is not relevant, since no related litigation exists concerning RBS's classification of its MLOs during the relevant period.

Third, Rule 23(b)(3)(C) requires the court to consider the desirability of "concentrating the litigation of the claims in a particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  Here, concentration of all claims in the District of Rhode Island is both efficient and desirable because RBS is headquartered in Providence, Rhode Island.

Fourth, Rule 23(b)(3)(D) requires the court to consider any "likely difficulties in managing the class action."  Fed. R. Civ. P. 23(b)(3)(D).  This requirement is automatically satisfied when a case is being certified for settlement purposes.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also Trombley I*, 2011 WL 3273930, at *4 ("For purposes of a settlement class, however, any issues pertaining to management of the class during litigation need not be considered.") (internal citations omitted).

Based on the above, Plaintiffs contend that the proposed settlement class satisfies the requirements of Rule 23(a)-(b) and should be certified for settlement purposes.

V.    **THE COURT SHOULD APPOINT NICHOLS KASTER, PLLP, WINEBRAKE & SANTILLO, LLC AND DONELON, P.C. AS CLASS COUNSEL**

A court certifying a class generally must appoint class counsel.  *See* Fed. R. Civ. P.

23(g)(1)(A).  The Rule lists several factors for courts' consideration: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  *See* Fed R. Civ. P. 23(g)(1)(A).  In addition, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).

Here, Plaintiff requests that Nichols Kaster, PLLP, Winebrake & Santillo, LLC and Donelon, P.C. be appointed Class Counsel.  These firms have diligently litigated this action and, after substantial investigation and analysis, negotiated a fair settlement with the assistance of a third-party mediator.  Moreover, as explained in the attached Lukas, Santillo and Donelon Declarations, these firms each have substantial credentials in wage and hour class litigation.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion in its entirety and enter the accompanying proposed Preliminary Approval Order.

Dated:  September 20, 2013          **CHARLES S. KIRWAN, ATTORNEY AT LAW**

*/s/Charles S. Kirwan*
Charles S. Kirwan
250-F Centerville Road
Warwick, RI 02886
T:  (401) 359-1166
F:  (401) 336-2448
E:  csk@kirwanlaw.net

**NICHOLS KASTER, PLLP**

*/s/Paul J. Lukas*
Paul J. Lukas, MN Bar No. 22084X*
Tim C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street

Minneapolis, MN 55402
T: (612) 256-3200
F: (612) 215-6870
E: lukas@nka.com
    selander@nka.com

**WINEBRAKE & SANTILLO, LLC**
Peter Winebrake, PA Bar No. 841503*
R. Andrew Santillo, PA Bar No. 93041*
Twining Office Center, Suite 211
715 Twining Road
Dresher, PA 19025
T: (215) 884-2491
F: (215) 884-2492
E: pwinebrake@winebrakelaw.com
    asantillo@winebrakelaw.com

**DONELON, P.C.**
Brendan J. Donelon, MO Bar No. 197776*
420 Nichols Road, Suite 200
Kansas City, MO  64112
T: (816) 221-7100
F: (816) 472-6805
E: brendan@donelonpc.com

*admitted *pro hac vice*

***Counsel for Plaintiffs and***
***Those Similarly Situated***